Mr. Justice Tiiotteb.
delivered the opinion of the court.
The appellant filed his bill in the court below for an injunction, to restrain the collection of a judgment which the appellee had recovered against him and others, in the circuit court of Warren county. The bill alledges that the name of the complainant was signed to the note on which the judgment was obtained, without his consent or knowledge, by his partner Glidewell, and in direct violation of an express stipulation in the articles of copartnership; and that the defendant Robinson fraudulently procured the same to be done. That he employed counsel to defend the suit on this ground, who by a mistake in pleading, was unable to bring forward the ground of defence relied on, and that a verdict and judgment were had against him. He thereupon moved for a new trial, which was refused. He appealed to the High Court of Errors and Appeals, who affirmed the judgment. The supplemental bill states that the consideration of the note was a number of *100 slaves brought into this state by Robinson, as merchandize, and for sale since the 1st day of May, 1833; and that this fact was not known to complainant until a time since the trial at law, and since the filing of the original bill. , The answer of Robinson denies that he had any knowledge of the stipulation in the articles of copartnership stated in the bill, or that he procured in any way the name of the partnership as security; that he knew nothing of the manner in which it was procured; that the note was delivered to him by Broadnax, with the name of the complainant’s firm on it. The answer also denies that complainant was ignorant of the consideration of the note, either at the trial or at the time of filing the original bill, and insists on the verdict and judgment at law as a bar to the relief asked by the complainant.
Two questions present themselves for the consideration of this court. 1st. Whether the consideration of the note for which the ' judgment was given is illegal, and renders it void. 2d. Whether a court of chancery can give relief.
The constitution of 1832 provides that “ the introduction of slaves into this state as merchandize, or for sale, shall be prohibited from and after the 1st day of May, 1833.” This, it is insisted, is an express prohibition; and therefore the introduction and sale of the slaves by Robinson, to the Messrs. Broadnax, was illegal. That it is competent for the people in convention to establish a rifle of conduct for themselves, and to prohibit certain acts deemed inimical to their welfare, is a proposition which cannot be controverted. And such rule, and such prohibition, will be as obligatory as if the same had been adopted by legislative enactment. In the former case it is endowed with greater claims upon the approbation and respect of the country, by being solemnly and deliberately incorporated with the fundamental rules of the paramount law, and thus placed beyond the contingency of legislation. It is difficult to conceive in what better or more appropriate language the convention could have designated its will, or declared the principle of public policy intended to be enforced. It has been argued that this provision in the constitution is merely directory to the legislature. This interpretation is opposed, as I conceive, to the plain language of the provision itself, as well as to the obvious meaning of the convention... It cannot *101 surely be maintained that this provision is less a prohibition against the introduction of slaves as merchandize, because it is not clothed with the sanction of pains and penalties expressed in the body of it. That belonged appropriately to the legislature. Their neglect or refusal to do so might lessen the motives to obedience, but could not impair the force of the prohibition. It cannot be doubted, that if the legislature, instead of remaining inactive, had passed a law to authorize the introduction of slaves for sale, that such an act would have been void. But I conceive it to be immaterial in this enquiry, whether the constitution be considered as merely directory, or as containing within itself an absolute prohibition. In either case it fixes the policy of the state on this subject, and renders illegal the practice designed to be suppressed. Considered in this view, it was beyond the power of the legislature to defeat this policy by any counteracting regulation, or by mere supineness. The provision required no aid from that body, save the sanction of proper terrors to transgressors, The addition of adequate penalties might secure it from violation, but could not aggravate the transgression, or render it more illegal. The supreme court of Tennessee have taken this view of a similar provision of the constitution of that state. In the new constitution, it is provided that the legislature of Tennessee shall pass laws to prohibit the drawing of lotteries. In the case of Bass v. The Mayor of Nashville, Meigs’ Rep. 421, the court held that this provision in the constitution was itself a prohibition. If this be so, then it follows that the act prohibited is illegal, and that any contract founded on such illegal consideration is void. 1 Leigh’s Nisi Prius, 6.
It has been insisted, however, that the prohibition in the constitution extends only to the introduction, and not to the sale of slaves; and that the words, “ as merchandize, or for sale,” were added by the constitution to describe the motive or intent of the act of introduction into the state, and to distinguish it from the act of introduction by a citizen of the state for his own use, which is not prohibited. The two cases are entirely different, it is true; and if we could separate the act of selling in the case, when that is the sole motive for the introduction, from the act of introduction itself, and thus regard the end of the introduction as entirely *102 separate and distinct from the means employed to effect it, the argument would1 be unanswerable. But I apprehend that this interpretation would entirely subvert the great object which the convention had in view, which was to suppress the slave trade in this state, as it was carried on anterior to the time of the adoption of the new constitution. The convention deemed that the time had arrived, when the traffic in this species of property, as “ merchandize,” should cease. They had seen and deplored the evils connected with it. The barbarities, the frauds, the scenes so shocking in many instances to our feelings of humanity and the sensibilities of our nature, which generally grew out of it, they, therefore, determined to prohibit in future, Another alarming evil grew out of it, which was highly dangerous to the moral and orderly condition of our own slaves, and that was the introduction of slaves from abroad of depraved character, which were imposed upon our unsuspecting citizens by the artful and too often unscrupulous negro trader. This was intended to be suppressed. Perhaps another object was, to prevent a too rapid increase of slave population in our state. The cardinal policy of the state was then to suppress this trade; and this is what is prohibited. In what then, it may be asked, does it consist ? The constitution has defined it. The offence consists in the introduction of slaves into this state for sale, as “ merchandize.” The sale then is the consummation of the prohibited act. It is that which indicates, nay, which demonstrates the illegality of the introduction. The act of introduction may, in some cases, be lawful ; it will always be illegal, however, if the intent is to sell. The sale consequent upon the introduction, evidences the intent, and fulfils the illegal purpose. I cannot then comprehend the argument which treats the sale in this case as unconnected with the illegal act of introduction. It regards the latter, that is the introduction, as a proper subject of animadversion, when the motive is a sale of the property, and yet legalizes the sale itself, the accomplishment of the motive for which the former act is made illegal. If the object of an act be the reason for prohibiting such act, it is difficult to conceive how the act can be illegal, and the object legal after it has been attained. It seems to me impossible to consider the sale as an act separate and distinct from the *103 introduction. It would be to condemn the means, and yet sanctify the end. • . ' ;
This case is very distinguishable- from those relied on by the counsel for the appellee. They were cases yrhere fraud’s had been practiced upon the. revenue laws, by smuggling goods into the country without paying the duties. A sale of goods thus smuggled in, when unconnected with the• illegal transaction, is good and binding. This doctrine does not militate against the policy of the revenue laws, which are only concerned with the collection of the lawful imposts. The subsequent sale is not the act prohibited. It,was the .importation without payment of the duties. Hence, whilst a contract founded on the consideration of importing without a compliance with the law, would be void, a subsequent agreement of purchase, which had rid dependence on, or connection with the illegal act of importation would be obligatory. These distinctions, I take it, are maintainable on reason and principle, independent of adjudged cases. But there a,re many decisions which directly sustain them — -thus, ,in the case of Law v. Hodgson, 2 Comp. Rep. 147, which was decided under a statute of England, which prohibited the making of bricks under the size mentioned in the act of Parliament. It was held that a contract for bricks of a less size than that specified could not be enforced. The act under which this decision was made, did not declare the sale void, but only inflicted a penalty; yet the court held, that to permit a recovery for the sale would be to make the violation of the law a source of profit to the transgressor. That would be to defeat 'the policy of the statute. Here the sale was -as distinct from the act of making, in the sense under which it has been urged upon the court in this case, as the sale of the negroes from that of the introduction., The sale was the object of the manufacture in that case, precisely as if was of the introdufction, in the case at bar. ■ But it is said that slaves are a species of property,'and recognized as such by our const-itutipn and laws, and. are therefore the legitimate subject of traffic. To this it may be, answered, that they are, in the mode and under the restrictions prescribed by law. I only maintain that they are not the legitimate subject of traffic by means of importation from abroad. They cannot be introduced from abroad and be thus legally sold. Bricks in Eng *104 land are a legal subject of transfer and sale, yet they cease to be so when niade under the statutory size. The cases of Billard and others, v. Hayden, 12th Eng. C. L. Rep. 222, and Forrester v. Taylor, 5 B. & Ald. 887, are to'the. same effect and fully sustain the reasoning I have adopted: I am hence clearly of the opinion that the consideration of the note in this case is' illegal.
I will, therefore, proceed to examine the second question in this cause, and that is,- whether the court of chancery possesses the power to relieve the complainant against the verdict and judgment at law. , 'The bill alledges two grounds for relief: 1st. That the name of complainant was signed to the note on which judgment was had without his consent or authority, and that he employed counsel..to defend the action on tliat ground., and that by the mistake or inattention of his counsel, he was not permitted to avail himself of this defence. That he has since been informed that Robinson' well knew that his complainant’s partner was prohibited by the terms of the partnership from pledging the name of the firm for the payment of debts as surety, and that he fraudulently procured complainant’s name to be used as it was by his partner. This ‘allegation is, however, positively denied by the answer. The second ground of relief is stated in the supplemental bill, which" is that he was ignorant of the consideration of the noté at the time of the trial at law, and also when he filed his original. bill. 1 will consider-these two grounds, under one view.
It is a general principle that the judgment or decree of a court of competent jurisdiction shall be final as io the subject matter decided, and not as to that merely, but as to" every other which might have been decided. The law abhors multiplicity of suits, and it is a-clierished object with courts of justice to put an end to litigation. Some period must be prescribed to controversies of this sort, and what period Can be more proper than that which affords a Ml and fair opportunity to examine and decide all the claims of both litigants. This imposes no hardship, since it. only requires a reasonable degree of vigilance, and attention". But a contrary course might be highly oppressive, and. endanger the stability of titles and the security of all our rights. . Hence it has become an established rule, that equity never will interfere to grant a trial of a matter which has already been discussed in a *105 court of law, a matter capable of being discussed then, and one of which a court of law has full jurisdiction. 2 Story’s Eq. 179.- It is not sufficient to show that injustice has been done, but that it has been done under circumstances which authorize the court to interfere. Equity then, as a general rule, will not interfere |when the party could have availed himself of the defence on which he seeks a new trial or injunction, and neglected to make it on the trial. Neither will he be relieved if he was prevented from doing so, by the mistake of his counsel in filing a plea which does not cover his defence. 2 Story, ISO. Hence 1 think it clear that Green is not entitled to relief on the first ground relied on. The matter of defence arising out of his' partner’s unauthorized and fraudulent use of his name, was fully triable at law, and the reasons offered for not bringing it forward are wholly insufficient. It was so held by the circuit court in which the cause was tried on a motion of a new trial, and afterwards by this court on a writ of error. In Bateman v. Willac, 1 Schoal and Lefroy, 201, Lord Redesdale observed that a bill for a new trial was watched with extreme jealousy. The court must not only be satisfied that injustice has been done, but that it was not owing to the mere inattention of the party. In Williams v. Lee, 3 Atkins 224, Lord Hardwick lays down the same rule, and remarks that relief will only be granted after verdict in cases where the plaintiff knew the fact to be otherwise than what the jury have found, and the defendant was ignorant of it at the trial. In Waggoner’s trustees v. McKenny, 1 Marshall, 480, the ground of relief was fraud in the sale of personal property. After verdict an application was made for a new trial at law and refused — and the defendant went to chancery for relief. The court said the rule was inveterate, that when the remedy at law was ample equity could not interfere.
It is by the observance of this rule that the boundaries between the two jurisdictions can be maintained. The chancellor cannot review the opinions of the law judge, if so the latter might reciprocate revisáis, and a conflict of jurisdiction must ensue, which would be fatal to the steady and regular administration of justice. See also 1 Call. 550. 2 Hen. and Munf. 144. The ground alledged, on information since the trial at law, that *106 Robinson fraudulently procured the signature of complainant’s name to the note, is fully denied in the answer. I will next consider the claim of complainant to relief, on the ground of the illegality of the consideration of the note. This matter of de-fence was available to complainant at law ; but it has been insisted that it is a matter over which equity has concurrent jurisdiction with a court of law, and that the complainant had a right therefore to elect in which tribunal he would have it tried. The rule upon this subject is fully stated by judge Marshall, in the case of Smith v. McIver, 9 Wheaton 552. That was a case where gross fraud was charged, and it was urged that it was triable either at law or in equity, but the chief justice remarked that equity could not on that ground alone grant relief, and that to entitle a party to the aid of a court of chancery after a judgment, some special ground must be shown, and that in all cases of concurrent jurisdiction, the court which first gets jurisdiction must decide finally. This decision is in exact accordance with the general rule laid down by judge Story in the 2d vol. of his Equity, after a full review of all the cases. In Barker v. Elkin, 1 J. Ch. Rep. 465, the ground of relief was a payment and set off.
It was not asked for on the trial at law, nor was any excuse offered for not making the defence there. The chancellor considered it to be a well settled rule that a defendant cannot go into chancery for a new trial when no special ground of fraud or surprise is suggested, and when he neglects without due excuse to defend himself in the proper place. In Dodge v. Strong, 21 Ch. Rep. 230, the same principle is recognized. In Lansing v. Eddy, 1 J. Ch. Rep. 49, it is said by the court that if a party suf fers a judgment to pass against him by neglect, he cannot have relief for a matter of which' he could have availed himself at law. The case of Smith v. Lowry, 1st J. Ch. R. 323, was where the defence was fraud, one of the favorite objects of chancery jurisdiction. And the court ruled that cases of relief against judgments at law on the ground of fraud were, where the fraud could not have been met and defeated at the trial. Whatever might have been the disposition of courts of chancery in former times to grant men trials in hard cases, applications at this time are very rare', owing to the liberal extent to which courts of law *107 have gone in exercising the same jurisdiction. In this state, the reason upon which such applications are cautiously received and jealously watched in other , countries, is greatly strengthened by the liberal provisions of our act of assembly, which allows a review of the grounds offered for an application to the court when the trial is had, on an appeal to this court. A party must therefore be culpably negligent of his interests not to obtain a full and fair examination of his claims in the trial at law. In Le Guen v. Governeur and Kemble, 1 J. cases, 436, this subject was fully discussed and examined and the rule laid down to be as I have stated it, on the authority of the cases already cited, and I have not been able to find any case in New York, in which it has since been departed from. In Graham v. Stagg, 2 Paige’s Ch. R. 323, the court refused to entertain a bill for relief against a judgment at law, when it appeared that the defence was ample at law, and that complainant was prevented from making it by filing a plea which did not cover his defence.
It is true that there are many cases in which a different rule has been adopted, yet I apprehend that in most of them it will be found that there is some feature which exempts them from the operation of the general rule laid down by judge Story,and adopted by the supreme court of the United States and by that of New York. Thus the case of Gainesboro v. Gifford, 2 P. Williams, 424, was a case where the defence was purely legal, yet equity relieved the defendant after judgment, on the ground that a receipt for the debt under the plaintiff’s hand was afterwards found. This does not conflict with the rule as above laid down, for the defendant had no knowledge of the existence of the receipt at the trial. And it may be remarked that the. authority of this decision has been very much questioned, and in some instances expressly repudiated. But without questioning its soundness, I deem it sufficient that it shows a special ground for relief. The case of Mayhew v. Crickett, 2 Swanston, 168, is not very intelligible. The chancellor remarks that the defence was available at law, but the ground for relief being matter of concurrent jurisdiction, he entertained jurisdiction. The case in 1 Atkins, 126, was when an off-set was offered at the trial and rejected, and the chancellor relieved the party on the ground that it was matter of account. *108 The case of Hughes v. McCoun, 3 Bibb, 254, was the case of a set-off, and decided on the same principle.
These cases and others like them go on the principle that where equity had originally exclusive jurisdiction of the subject matter, it cannot be ousted of its powers because the courts of law have taken cognizance of the same matter. I confess I am unable to perceive the just foundation for a different rule in one class of cases of concurrent jurisdiction from that which has prevailed in other classes. The policy of the general doctrine before noticed, that in cases of concurrent jurisdiction the court which first gets jurisdiction must decide finally, demands, in my opinion, universal application, and in that sense it appears to have been regarded by the supreme court of the United States. I look upon the contrary doctrine as at war with the best interests of society, by encour-agingslitigation.
It is the safest practice in all cases to refuse relief in equity after a trial at law, when the court possessed ample powers to adjudicate the subject. It cannot be tolerated that a party to a suit at law, with a full knowledge of his defence shall be suffered to sit by and offer no objection to the claim of his adversary, and then find protection in equity, for no other reason than that the subject was one of original, exclusive chancery jurisdiction. But it is said that whatever may be the rule as far as the mere private interests of the parties are concerned, yet the court of chancery will, to protect the public policy of the law, interpose. And the case of Harrington v. DuChatel, 1 Brown, ch. R. 124, is relied on as an authority for this doctrine. That was the case of a bill filed after a suit at law had been commenced on a bond, praying that the bond might be delivered up and cancelled, on the ground that it was given for a consideration which was against public policy. The consideration was a recommendation to a public office — and the chancellor decreed it to be cancelled. That case came before the chancellor under a different form from the one at bar. There the defendant at law did not lie still and suffer a judgment to go against him. He appealed at once to the exclusive jurisdiction of a court of chancery to cancel a void deed.
But the decisions in England on this subject are not uniform. Thus in Gray v. Matthias, 5 Vesey, 295, the action at law was *109 upon two bonds, one for past and the other for future illicit cohabitation. Upon a bill for an injunction it was objected to the relief that the party should have plead at law — and the court remarked that as the objectionable matter appeared on the face of the bond, the defendant should have demurred, and that though in such cases equity may have concurrent jurisdiction, it was not fit that it should entertain it in that particular easel This was surely a much stronger case so far as public policy and the preservation of good morals can add sanction to the jurisdiction of a court of chancery, than the one at bar.
1 conclude then that upon authority as well as principles of public policy the bill in the present case cannot be sustained. This defence was available at law, and no good reason is furnished why it was not then brought forward. The complainant alledges that he was ignorant of this ground of defence, but the answer expressly denies that allegation, and the whole circumstances of the case show that if he did not know it, he might have learned it by the most ordinary diligence. The slightest enquiry would necessarily have placed it within his knowledge. I think the decree of the chancellor should be affirmed.
Sharkey, Chief Justice, concurred on the first point, as to the void character of the contract, but dissented as to the second point, the want of jurisdiction.
Noth. — This case was decided at a former term, but omitted in the reported decisions.